**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
SECURITIES AND EXCHANGE                 :
        COMMISSION,             :
                                        :
        Plaintiff,              :    CIVIL ACTION NO. 05-3905 (JAP)
                                        :
        v.                      :
                                        :    **OPINION**
KENNETH D. PASTERNAK, et al.            :
                                        :
        Defendants.             :
_____ :

PISANO, District Judge.

      Presently before the Court is a renewed motion brought by Defendants Kenneth D.

Pasternak and John P. Leighton (collectively "Defendants") to preclude Plaintiff Securities and

Exchange Commission ("SEC") from proffering the expert testimony of Richard Gunter

("Gunter"). On April 22, 2008, prior to trial, the Court denied this motion without prejudice.

During the pendency of the trial, on May 22, 2008, the SEC sought to proffer Gunter as an expert

in the field of "market making and institutional trading." Defendants renewed their prior motion

and objected to the proffered testimony pursuant to Federal Rule of Evidence 702 and _Daubert v._

_Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579 (1993). For the reasons set forth below, as

well those placed on the record on May 22, 2008, the Court grants Defendants' motion to

exclude from the trial Gunter's proffered expert testimony.

## I.    BACKGROUND

      This cause of action arises from allegations that Defendants violated certain provisions of

the Securities Act of 1933 and the Securities Exchange Act of 1934.  Prior to trial, on March 31,

2008, Defendants moved *in limine* to preclude the SEC from proffering the expert testimony of

Gunter.  After having heard oral arguments, the Court denied that motion without prejudice on

April 22, 2008.

On May 13, 2008, the Court began the first day of the bench trial on this matter.  On May

22, 2008, during the SEC's case-in-chief, the SEC presented Gunter as an expert witness.  The

SEC sought to proffer Gunter as an expert in market making and institutional trading.

Essentially, the SEC aimed to use Gunter's testimony and expert report to (1) explain industry

standards and customs and (2) reconstruct trades executed by Joseph Leighton from "trade

runs"—data drawn from records held by Knight Securities ("Knight") that was reported to the

National Association of Securities Dealers Automated Quotation ("NASDAQ").

Upon *voir dire* of the proffered expert witness, Gunter testified as to his qualifications

and experiences.  Since 1961, Gunter has traded stocks on the New York Stock Exchange

("NYSE") as trader of a NYSE member firm.  During his tenure, Gunter held managerial

positions and served as various executive officers with trading associations, such as Security

Traders Association and the Security Industry Association ("SIA").  He also served on

disciplinary committees of the National Association of Securities Dealers ("NASD"), which is

now known as the Financial Industry Regulatory Authority ("FINRA").  Presently, Gunter is a

market maker operating in the NASDAQ market as an employee of Wedbush Morgan Securities,

a regional full-service firm.  As part of his experience as a trader and market maker, Gunter

testified that he was familiar with, and had previously reviewed, historical data of trading

transactions electronically recorded on either the Brokerage Real Time Application Support

-2-

System ("BRASS") or a Bloomberg system.

However, Gunter never served as a trader or market maker for a wholesale NASDAQ firm. He averred that his experiences as a trader and market maker involved low-volume and less-volatile stock transactions. Gunter further stated that, in the relevant time period of 1999-2000, he processed as a market maker approximately three to five orders on a daily basis. In addition, Gunter testified that his trading and market making experiences did not involve "retail order flow" that could interject into, and affect, his execution of the orders.

Gunter has never published any articles or papers on the topics of industry standards or customs for market makers and/or traders in over-the-counter ("OTC") markets, or the reconstruction of trades based on "trade run" data. He has never testified as an expert witness in NASD/FINRA disciplinary hearings or in a civil action brought by the SEC.

Gunter also testified as to the methodology he utilized in his expert report to reconstruct Joseph Leighton's trades and to analyze that data to reach his ultimate opinion. According to Gunter, he reviewed seven particular trades. Gunter relied upon the data extracted from Knight's BRASS program that reflected the information reported to the NASDAQ on those certain trades. In his analysis, Gunter averred that he did not consider various factors that could have affected the data reported. He did not account for: (1) market conditions—i.e., public information that may affect the market; (2) the volatility of the particular stock traded; (3) the instructions of Joseph Leighton's customers on each particular trade; (4) retail order flow that "trades ahead" of an order placed by an institutional customer; or (5) the capital Knight might have committed on the trade. In addition, Gunter did not compare Joseph Leighton's trade runs with the trade runs of other market makers executing similar orders on the same dates.

-3-

In addition to the BRASS data, Gunter also considered the calculations made in a report drafted by Patrick Geraghty ("Geraghty"). Geraghty's report related data as to the alleged profit per share acquired by Joseph Leighton through his trades. However, in reaching his own opinion, Gunter did not verify the methodology or accuracy of Geraghty's report. Finally, no other person in the industry familiar with analyzing BRASS data or reconstructing trade runs reviewed Gunter's proffered expert report.

Presently, Defendants move to exclude Gunter as an expert witness. Defendants argue that Gunter is not qualified as an expert in the particular industry at issue in this case. In addition, Defendants submit that Gunter's methodology is unreliable and his analysis is not helpful to the fact-finder. The SEC opposes the motion. The SEC contends that Gunter is qualified based on his forty-plus years in the security industry, his service in various trading associations, and his experience as serving on NASD disciplinary panels that reviewed similar BRASS or Bloomberg data. The SEC further submits that Gunter's methodology is appropriate and reliable. The SEC emphasizes that Gunter reviewed data reflecting the NASDAQ "tape"—that is, the NASDAQ-maintained publication of all recorded transactions executed in the NASDAQ market. Finally, the SEC argues that Gunter's testimony is helpful to the fact-finder in that it would establish: (1) how the institutional market operates; (2) the customary practices and charges; and (3) the method used by Joseph Leighton to execute his fraud as depicted in the BRASS data.

## II.    DISCUSSION

Federal Rule of Evidence 702 governs the admission of expert testimony and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion

or otherwise[.]"  Fed. R. Evid. 702.  Two particular requirements apply to the admissibility of

scientific expert testimony: (1) it must have sufficient grounds in scientific knowledge, such that

the "reasoning or methodology underlying the testimony is scientifically valid," and (2) the

opinion must be helpful to the fact finder.  *Daubert*, *supra*, 509 U.S. at 592-93.

These requirements are met if the proffering party establishes a three-pronged inquiry: (1)

the witness is qualified as an expert in a particular field; (2) the methodology applied by the

witness is sufficiently reliable; and (3) the witness's testimony "fits" the facts of the case in

dispute—in other words, the proffered testimony would assist the trier of fact.  *In re Paoli R.R.*

*Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994).  Applying that analysis, the Court finds that

the SEC has failed to establish that Gunter meets any of those three prongs such that Gunter may

testify to (1) explain industry standards and customs or (2) reconstruct trades executed by Joseph

Leighton from "trade runs."

### A.    Gunter May Not Testify to Explain Industry Standards or Customs

In respect of whether Gunter may testify as to industry standards or customs, the Court

first considers Gunter's qualifications.  Indeed, Gunter's extensive experience as a trader and

market maker is impressive.  It is beyond doubt that Gunter is knowledgeable and has expertise

in the general field of securities.  However, Gunter lacks any experience in the particular industry

in which the disputed events of this case occur.  Gunter has no experience in wholesale market

making firms, or in trading high-volume, highly-volatile stocks.  Furthermore, Gunter testified

that he recognized that the trading at issue in this case ensued from a different "business model"

than that in which he had worked.  In addition, Gunter's experiences in trading organizations

bears no rational relationship to the circumstances of this case.  As a result, Gunter has no

particular expertise, knowledge, or experience in the nature and type of trading that is the focal

point of this action.  Thus, the SEC has failed to establish that this particular witness is qualified

as an expert in the industry practices of a wholesale market maker firm that principally trades

high-volume, highly-volatile stocks on the NASDAQ.

The Court next considers whether Gunter's methodology is reliable.  To determine

reliability, a court must find that the witness's proffered expert opinion is "based on the methods

and procedures of science rather than on subjective belief or unsupported speculation."  *In re*

*Paoli*, *supra*, 35 F.3d at 742.  Gunter, to explain the general market making practices and

customs, failed to consider various factors potentially present in the trading in dispute here.

Gunter averred that he did not consider whether Joseph Leighton might have committed capital

on a certain trade, whether the trade involved a highly volatile stock, or whether intervening

retail order flow could have affected the trade.  As a result, the Court finds that Gunter's

methodology is unreliable.

Finally, the Court finds that Gunter's conclusions as to industry standards and customs

will not assist the Court in its fact-finding role.  Indeed, Gunter's opinions as to market making

in general do not fit the facts presented in this case and bear little relationship to the nature and

type of trading executed by Joseph Leighton at Knight.  Therefore, the Court holds that Gunter

may not testify as an expert in the field of market making and institutional trading for the purpose

of explaining industry standards and customs.

**B.    Gunter May Not Testify as to His Reconstruction of Joseph Leighton's Trades**

The Court again begins its analysis by reviewing Gunter's qualifications to determine if he is the proper witness to testify as to the reconstruction of Joseph Leighton's trades.  The Court finds that, apart from his serving on NASD disciplinary panels where he reviewed trade runs, Gunter has no experience in reconstructing particular trades based on the NASDAQ tape. Although Gunter has reviewed NASDAQ tapes, that experience does not necessarily correlate to an expertise in the methodology used to reconstruct trades from that raw data.  Indeed, Gunter testified that he is aware that a particular field in trade data forensics exists, but that he was not aware of the particular education and training people receive to work in that field.  Moreover, Gunter stated that he has not undertaken any particular course or training in such a field.  Thus, the Court finds that, despite Gunter's extensive experience in the general securities industry, he has no specialized expertise or qualifications relevant to the reconstruction of trades based on historical data.

Next, the Court also finds that Gunter's methodology for reconstructing Joseph Leighton's trades is unreliable.  First, the Court again emphasizes that, in concluding how Joseph Leighton made those seven particular trades, Gunter did not consider:  (1) market conditions at the time of the trades; (2) the volatility of the particular stock traded; (3) the instructions of Joseph Leighton's customers on each particular trade; (4) retail order flow that trades ahead of an order placed by an institutional customer; or (5) the capital Knight might have committed on the trade.  Moreover, Gunter did not compare Joseph Leighton's trade runs with the trade runs of other market makers executing similar orders on the same dates.  Second, Gunter based some of

-7-

his conclusions on the assumption that the data provided in Geraghty's report was accurate and reliable.  For those reasons, the Court finds that Gunter's methodology for reconstructing how Joseph Leighton executed his trades on seven occasions is unreliable, and not "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *In re Paoli*, *supra*, 35 F.3d at 742.

Finally, the Court concludes that Gunter's opinion, based on his review of the seven trades, that Joseph Leighton engaged in fraud is not helpful to the Court.  Gunter's opinion does not consider many factors that have been presented to the Court during the trial that are pertinent to determining whether a fraudulent activity occurred.  Moreover, the Court finds that Gunter is not qualified to testify as to Joseph Leighton's intent in executing his trades.  Essentially, Gunter's proffered expert opinion is not based on a methodology recognized in the industry. Therefore, the Court holds that Gunter may not testify as an expert in the field of market making and institutional trading for the purpose of reconstructing Joseph Leighton's trades.

## III.    CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion to exclude Gunter's testimony.  The Court finds that Gunter is not qualified as an expert in the nature and type of industry in dispute in this action, the methodology applied by Gunter is unreliable, and Gunter's opinion is not helpful to the Court in its role as a fact-finder.  An appropriate order accompanies this Opinion.


                                         /s/ Joel A. Pisano
                                         JOEL A. PISANO, U.S.D.J.

Dated: May 23, 2008